May it please the Court, my name is Benjamin Ogletree and I am Counsel for Defendant's Appellants, GrandCare, LLC and Mariner Healthcare, Inc. Respectfully, if I could, I'd like to reserve three minutes of time for the testimony. Let me ask you this, Mr. Medley, can you hear Mr. Ogletree? I can, Your Honor. Thank you. Okay, and make sure you speak into the microphone. Yes, sir, I will. This is a case about fraudulent joinder. Yes, sir. My clients have appealed from an attorney's fee award that was entered against them after the district judge concluded that they had removed this action from California State Court to the Federal District Court based on a fraudulent joinder theory that the district court believed was objectively unreasonable. I have two main issues that I'd like to... So you're not here on the remand, you're here on the attorney fee award? That's correct, Your Honor. You can't appeal the remand, that's non-appealable by statute. That's correct, Your Honor. We actually addressed that in the order to show cause that this court issued immediately after the appeal was filed. The remand order itself, the case is back to state court, there's no changing that. The attorney's fee award, however, that is appealable and you have appellate jurisdiction over that issue. And as this court recognized in McDowell v. Rosenfeld, as part of the analysis of the review, the merits of the remand order... You know, there's not very much money involved in the attorney's fees award. Why is it worth your litigating this all the way up here when the remand, the underlying issue, that's off the table? Why do you care? Your Honor, the issue of fraudulent joinder is the proper standard that's being applied. The district courts across the circuit are split, there's a significant split. I understand that too. Yes, sir. Why does your client care? Does your client have a lot of these cases? Well, Grand Care LLC is a licensee of several nursing facilities across California. It is frequently, not frequently, but it's sometimes a defendant in lawsuits and would like to be able to exercise its right of removal in certain cases when they can meet the statutory criteria. I got it. So at least in your client's view, this case is worth more than what's actually at issue in the dollar amount. There's more at stake here than just the $2,500, yes, or $2,700. We would not be here if it was just for that. Okay. Got it. So if I could, there's two main points. One is that the fraudulent joinder issue, the split of authority that I wanted to address and how that's decisive in the outcome here. The second is I'd like to get there, I'd like to dispel once and for all any suggestion that my colleague who is defense counsel in the proceedings in the district court below somehow intended to deceive or to mislead the district court and that that provides an alternative basis for affirmance, which the appellees had argued in their briefs in this court. Well, it looked to me like Judge Alsup, maybe this is Judge Tallman speaking, Mr. Ogletree, it looked to me as though Judge Alsup was concerned about the fact that your co-counsel below had misrepresented to the district judge whether there were any allegations against the nursing home administrator personally, and it looks to me like there are several paragraphs where there are indeed allegations of personal wrongdoing, breach of the duty of care, negligence and so on. So I can understand why Judge Alsup was concerned about what counsel was saying. So, Your Honor, I think it was a dispute over the definition of the meaning of the word no specific allegations. As Mr. defense counsel below had argued. Well, are you now prepared to concede that there are in fact allegations against the nursing home administrator? Oh, absolutely, Your Honor. Then the entire argument that counsel had made below in the removal petition and in the opposition to the motion to remand had acknowledged time and again that there were that Ms. Rhodes, the administrator, that her name appeared in various paragraphs of the complaint. The argument was the mere incantation of a resident defendant's name in a complaint in paragraphs of the complaint, but where those paragraphs contain no specific allegations, as we contend, stating a cause of action against her. Those are not specific allegations. I think that's where the district court and my colleague missed each other. I may not have understood what you just said, but it looked to me in reading the complaint here against your client, that there were several specific allegations against her. If specific allegations, Your Honor, means that they've directed her, paragraphed her by her name, if that's what the district court understood to mean. No, I'm looking at pages 11 and 12 of the plaintiff's complaint here, where it outlines in paragraphs, starting in paragraph 40 and going through at least 48, that there are a number of specific duties that are established either by state law, state regulation or California precedent that she's accused of breaching, which I assume then leads to a conclusion of legal negligence if it's established. Isn't that a direct allegation of wrongdoing? So the argument that we made in the removal petition and in the opposition to the remand motion was that these, particularly these eight paragraphs, yes, they mention the administrators by name, but there's no specific allegations. When I say specific allegations, we mean facts, in other words. In each paragraph, Your Honor, the complaint identifies a provision of two particular duties under those provisions. And then in conclusory fashion, as to each one, it concludes each one by saying something to the effect of, and I'm reading, for example, from paragraph 40, Remy Rhodes did not properly carry out these duties, thus allowing the injuries suffered by Ruth Thrower to occur. All right, well, let's look at paragraph 46, because I think that's pretty specific. Paragraph 46 accuses her of failing to properly conduct a pre-admission personal or telephone interview with Ms. Thrower's physician, which is required by the Code of Federal Regulations. How much more specific does the allegation have to be? Does the duty be created by the regulation and the allegation here is that she never made the phone call? So, Your Honor, two big points. First of all, we dispute that that particular provision of the Code of Regulations imposes a duty on a nursing home administrator. Well, we're not here on the merits, counsel. We're here assuming the truth of the allegations in the complaint, and that's a very specific factual omission. It's an act by omission, I guess, would be the best way to characterize it, that plaintiff alleges is created by California law, and that it is imposed on nursing home administrators, and she's the nursing home administrator. So how much of the what, when, where, how, and why more do we need? So two responses. One is that the particular code section doesn't necessarily require just the administrator to conduct the interview. It could be the administrator or her designee. So one of the points of the law. Can I interject here? What I'm trying to figure out, and you're dancing around it in a way, you're clearly arguing to us that if this were a 12B6 motion, that this particular defendant would be dismissed, either because the complaint is insufficiently precise under Iqbal, or because on the merits it loses. But that really gets us to the question that's in front of us, and that is, what's the standard which we determine whether there's been fraud, human joinder? Yes. And to the extent that there's a split in the jurisdictions, or a split in the decisions in the lower court, some, and I gather, in fact, Judge Seaborg's name is specifically mentioned in Judge Alsop's order, some district judges look at fraudulent joinder almost as if it were a 12B6 question. Judge Alsop looks at it saying, well, all it has to be is, and I'm paraphrasing, all it has to be is a fairly plausible complaint against a particular defendant. Maybe the defendant is going to be dismissed on 12B6, but so long as it's plausible, that's not fraudulently joined. I gather you're on the Judge Seaborg side of the line. Yes, Your Honor. So if Judge Alsop is right in terms of what the standard is, is Judge Alsop right in terms of the resolution of this case? Under the any possibility standard that Judge Alsop outlined and that other courts have followed, I would concede that one of the problems with it, it makes it virtually impossible for it, and it's fraudulent joinder theory based on inadequate factual pleading for removing defendant to be able to meet the test. And the reason is because even if you could show in theory, even if you could show that the resident defendant, there was no valid cause of action stated against the resident defendant, even according to under the, and it was obvious even under the settled rules of the state, under the test that was applied by the district court below, that still wouldn't be good enough because you'd have to go further to demonstrate that there could be no future potential allegations that in an amended complaint, the plaintiff were granted leave to amend. Will you concede that there's a difference in arguing that the statements that Judge Tallman went through from the complaint don't meet what should be the standard for determining fraudulent joinder or not, or telling the district court that there are no specific allegations? Forgive me, Your Honor, I'm not sure I follow your question. Well, your co-counsel below told Judge Alsup there were no specific allegations. Our reading of the complaint indicates that there are. Whether they're sufficient under the Seaborg standard or the Alsup standard is another question. But to argue to Judge Alsup that there were no specific allegations, because that is the difference between this case and the Johnson case. The Johnson case simply identifies misroads, says there are no specific allegations. And part of the underpinning of your argument that you did this in good faith, your client did, is that you relied upon what happened in the Johnson case. That's exactly right. That's what made Judge Alsup's questions about specific allegations and his concern about it so important. And I think it's important also. Let me respond. Two quick points. One, Judge Tallman, in answer to your question, I was simply trying to explain the argument that my colleague was trying to make. And I think that as I read the transcript from the hearing, I think there was just a miscommunication. And my colleague, who was an excellent lawyer and a good guy, would be the first to say that perhaps he could have been more articulate in his description. I think what was bothering Judge Alsup was that he didn't have to go to the next stage as Judge Hawkins was articulating of speculating. He had specific enough allegations before him in paragraph 46, for example, that he didn't have to worry about whether or not we were speculating about potential liability. She was being accused of failing to meet that duty, which is established under the regulation. And on that point, Your Honor, I think the argument, our argument is, and it was intended to be conveyed below, was that following Judge Seaborg's ruling and the reasoning of his Johnson order, that these allegations did not meet the test as we articulated by Judge Seaborg. That was the argument that was trying to be conveyed, not trying to deceive anyone to say, well, of course there's allegations against the administrator. I mean, that obviously couldn't be what he was trying to say. Like you said, there's eight paragraphs of them. It was a pretty silly thing to say if that's what he was trying to say. No, yeah. Judge Alsup has the complaint in front of him. Right, exactly my point. It could have been more articulate, but it certainly was an attempt to deceive or to mislead. But back to the question of, for shorthand purposes, the Seaborg standard or the Alsup standard. It strikes me as I read Judge Tsushima's opinion in the Hunter case that Judge Seaborg, I know and respect both judges, I want to make that clear, but it strikes me that if we read Judge Tsushima's opinion in the Hunter case, Judge Seaborg can't be right. That is to say, as I read Judge Tsushima's opinion in the Hunter case, he very explicitly says this is not a 12B6 question. This is a fraudulent joinder question. Your Honor, we would say that the standard for fraudulent joinder is, and I don't think Judge Seaborg said it's exactly the same. I think he said it's similar to it. In the sense that the first, this Court's precedence established that the first rule of the fraudulent joinder analysis is you look to the complaint to determine whether, based on State law, a valid claim has been stated. That's right. And so in that sense, it is similar to a 12B6 motion. And this Court has used other words than describing this sort of analysis. I think there's been an overlap that's all there is to describe. Wouldn't that test be met here with the example that I questioned you about? No, I don't think so, Your Honor, respectfully. Simple negligence? I would say because there's no evidence, no allegations of causation or breach. Well, as I understand the theory is it's negligence that flowed from failing to talk to the patient's doctor to find out what her specific medical problems were in order to determine whether or not she could safely be admitted to this nursing home facility based on whatever resources are available at this facility. That's the purpose behind the regulation, right, for the pre-screening admission interview. So assuming that that's all true in looking at the complaint, why wouldn't that be sufficient under California general negligence law to find a nursing home administrator liable because, as I understand it, she died from injuries suffered in a fall in the nursing home, and the plaintiff's theory appears to be that she should never have been admitted to the nursing home in the first place because it wasn't an appropriate facility for someone suffering from dementia and instability and perhaps all the other things that a pre-admission screening interview should have revealed? Your Honor, my time has expired, but I would like to answer your question. Assuming for the moment that the provision that we're talking about actually imposes a personal duty of care on an administrator, and I know there's a dispute, but let's make of your question that it does, it is conceivable that if facts were properly pled and it's under that construct, that it is possible that you could have a cause of action or have a properly pled complaint. But the facts in my question all come from the complaint. But what's missing here is, so if she didn't speak to the physician or she didn't screen the patient, what is it that she should have learned before that would have... That this was not a suitable patient for admission to this particular nursing home. And that's not what's alleged. You'll look, the judge below, he did make a finding in his order of causation. But, Your Honor, if you'll go to page 5, at the bottom of his... Your Honor, if you could bear with me, we could walk through this. At page 5, bottom of this goes to exactly what you were pointing, Judge Tomlin. It says at the bottom of the order, page 5, this is an excerpted record extract to page 5. It said, furthermore, Thrower's successors allege that Rhodes' failure to conduct a pre-admission interview with Thrower's doctor, failure to properly screen Thrower to ensure the facility could provide adequate care, and failure to update the assessments as frequently as necessary to determine the specific interventions that should be put into place to prevent Thrower from suffering falls constitute a neglect. Now it cites paragraph 28 of the complaint. But when you go to paragraph 28 of the complaint, Your Honor, the first two parts of that, the allegations about the pre-screening and the admission, they're not there. That's not what it says. It says nothing of the sort. You know, I want to get back to standards rather than particularity here. You may or may not be familiar with the standard for subject matter jurisdiction in a federal question case. There's a case called Bell v. Hood, Supreme Court case from quite some time ago that lays this out, that the standard for determining subject matter jurisdiction under 1331 federal question is not whether or not a cause of action has been stated, but rather whether or not the cause of action pled under federal law is frivolous. Why don't we import from that jurisdictional standard the frivolousness and use that to determine whether or not there's been fraudulent joinder, that is to say the naming of Ms. Rhodes is designed as a jurisdictional device, and if we're determining jurisdiction on federal question in terms of whether it's frivolous, why isn't it appropriate to use the same standard here? So in other words, we would be – oh, I see. Pardon me? I'm thinking – I'm sorry, Your Honor, I'm making the mistake of thinking out loud. I should know better. That's okay. If you're thinking out loud, think to yourself. I would say to my initial response, if I could, Your Honor, if I respectfully if the panel would allow, if I could – I'll give you my response now, but I'd like to think about it and if I could maybe submit a supplemental response to address your question because it's – We'll ask you. If we want a supplemental response in writing, we'll ask for it, but give me the top of your head at the moment. My concern is that – and this is my – I'm coming from the viewpoint that the standard applied by Judge Seaborg was correct, that using the frivolous test, as I've heard you articulate it, I think that it's over-inclusive and it would exclude too many cases that otherwise would be properly – could be properly subject to removal. Remember the Supreme Court in Martin in talking about the attorneys' fees issue in awards under 1447 to talk about the balance. They talked about, you know, that yes, there's a presumption against removal and if I'm remembering it correctly. But they said just at the same time, if the statutory criteria are met, a removing defendant should be entitled to remove their case. And it even made – I think it even made the point about something to the effect of it shouldn't be such – the bar shouldn't be set so that there's a fear of removal except in all but the most obvious cases. I mean, I'm not sure if that's entirely applicable to your question, but the point that I'm trying to make is that I think the standard applied by Judge Alsop and forgive me, but the test that you hypothesized, again, they're too far off on – too far off the mean. There should be – the balance should be struck that, you know, that those cases that should be removed should be – I think that's a perfectly satisfactory answer and you need do nothing more to supplement it in writing. Let's hear from the other side. Thank you, Your Honors. And while we've taken you well over time, we will give you a chance to respond. Thank you for your courtesy. Yes, sir. Thank you, Your Honors. May it please the Court. And I think the Court has touched upon this in the argument from appellant's counsel. The entire basis of the improper removal and this appeal is to simply ignore the allegations of the complaint. They're clear. They're specific. They allege wrongdoing against Ms. Rhodes that would subject her to liability both under a negligence and elder abuse standard. There's specific allegations that she violated regulations and that they caused injury. And I'd like to address the misrepresentation from counsel that there was no allegations of causation. There are, specifically at paragraphs 45 and 48. And at paragraph 45, it specifically alleges that her breach of duty relating to admitting only those patients for whom it can provide adequate care. And the Court touched upon that, counsel touched upon that and said there were no allegations relating to whether she was appropriate for admission to the facility. There simply are. So the whole basis of the improper removal and this appeal is to simply ignore the allegations. And that's exactly what Judge Alsop ruled. At oral argument in his order, he specifically ruled that there are allegations. So with all due respect, we don't even get to the fraudulent joinder standard. The standard is whether the removal was objectively reasonable. And Judge Alsop ruled it was not because the entire basis of the removal was to ignore the allegations. Counsel, this is Judge Hawkins. I have a question for you. Yes. The core standard here, as I understand it, is whether given all the facts and circumstances, it was unreasonable to remove this case to federal court. And when counsel looks at a ruling not only from a federal court, but from the same judicial district as this case, and sees that another judge in that district has determined that the joinder of this particular health care provider was fraudulent, how can that be unreasonable in terms of a position taken by counsel? And thank you, Your Honor. And I believe Your Honor is referring to the Johnson case, which is totally distinguishable because there were no allegations. I understand it's distinguishable. And I understand the distinction. And I accept the distinction. But a lawyer in practice who looks at a case decided by a colleague, and I take it it was prior in time? Yes. Yes, Your Honor. Okay. So he's in court in which a colleague of the district judge he's now in front of has said that the joinder of Rennie was fraudulent. How does that position become unreasonable? I understand the arguments that were made and whether there were specific allegations or not. And the response may well be, well, there's detail in one complaint and not the other. But to institute the removal, that's the point in time we're talking about, right? Yes, Your Honor. So how could it possibly be unreasonable to rely upon what a colleague of this judge said in seeking removal? Yes, Your Honor. And my answer to that question is it was not in total reliance on Johnson. It was in reliance on ignoring the allegations of the complaint. An objective, reasonable attorney would look at the Johnson case and say that the basis for that decision was that there were no individual allegations against the individual non-resident defendant. And an objective, reasonable attorney would look at this complaint and say there are specific allegations. And that's exactly what Judge Alsup ruled and recognized. And the fact that they continued to argue that there were no specific allegations, even though an objectively reasonable attorney would have seen that at the outset, that there were, is what so angered Judge Alsup. Are you telling us that even though at the moment of removal a counsel and his or her client is acting objectively reasonable, that their position can become objectively unreasonable by the virtue of the arguments that they make in front of the court? No. I believe that the arguments they make in front of the court after the fact indicate that it was not objectively reasonable at the time they removed the case. Listen, I think everybody up here on the bench wishes that co-counsel had simply said there's a difference between these. I understand there's a difference between these two complaints. But even with the detail, it's not sufficient under a 12B6 standard or something like that would have been a perfectly reasonable argument. But my concern is what I've just articulated. If it's reasonable at the time removal is sought, can it become unreasonable by virtue of the arguments made in court? And if your answer is yes, what's your case that supports that? And my answer is no, Your Honor. It does not become unreasonable after the fact. The arguments may indicate that it was unreasonable at the time. The arguments do not somehow make the removal unreasonable after the fact. What made the removal unreasonable at the time it was removed was ignoring the allegations of the complaint. And we've seen that time and time again. Counsel wanted to dance around it, argue the merits, danced around, got into semantics about, well, what does a specific allegation mean? That is not objectively reasonable. It's not objectively reasonable to just ignore what is in a complaint when you remove it. And that's what Judge Alsop ruled. Counsel, give me an example of a case where a party seeks removal reasonably but loses. An example of this? Yeah. Or in a hypothetical way, change the facts of this case that would make the seeking of removal reasonable at the time of filing but becoming unreasonable thereafter. Yeah. See, my concern is, under the standard you articulated, I'm concerned that any time counsel is wrong about some underlying fact, their decision to seek removal is unreasonable. Tell me the standard you apply to avoid that problem. Well, and I'm thinking this out. The basis for removal has to appear on the face of the complaint or on matters that are judicially noticeable. So if it's not in the complaint, then, I mean, counsel can be wrong when they remove something. But if it appears on the face of the complaint that the matter is not removable, then it's not removable. There's no second-guessing that fact. What's in the complaint is in the complaint. What is judicially noticeable is judicially noticeable. So, yeah, counsel can be wrong, but it doesn't change the fact of what the allegations were. So in this case, there's clear allegations that a non-resident defendant is specifically liable, and that's what makes the removal unreasonable. And then if we get to the standard of fraudulent joinder, that standard is clear, in my opinion, as well. If there's no possibility that the defendant can be liable under the allegations of the complaint. And here the court itself, the judges, Your Honors, have themselves pointed out the specific allegations that she violated regulations, which under the California case law, the Norman v. Life Care cases, the violation of a regulation entitles the plaintiff to a negligence per se jury instruction and constitutes neglect under the Elder Abuse Act. So it cannot possibly be argued that there was no possibility that a cause of action was stated against Ms. Rhodes. So under both standards, the fraudulent joinder standard, the objectively reasonable standard, they don't meet either test. So if counsel for Grand Care had come before Judge Allsup and said, We're here today because we have a case that is remarkably similar to a case that your colleague down the hall just heard and determined that the joinder of a specific individual was fraudulent and therefore the case was remanded. And although that judge applied what seemed like a Rule 12B standard, we're here to articulate a little different standard and the same result had occurred. Would the removal have been unreasonable? Yes, Your Honor, because there were specific allegations in the complaint against the defendant, the individual non-resident defendant, Ms. Rhodes, that established liability. There was never any question that there was some sort of failure to state a cause of action against her under an objectively reasonable standard, under the fraudulent joinder standard. There was no question. The only basis they had for removing this under both standards was to ignore those allegations. So it doesn't matter what they argued in front of Judge Allsup. It doesn't matter that, according to Judge Allsup, they misrepresented the allegations of the complaint. What matters is that they ignored the allegations to begin with. And that's the difference between the Johnson case and this case. Mr. Medby, this is Judge Tallman again. I'm looking at page 9 of the district court's opinion, the paragraph at the top of the page, where Judge Allsup was quarreling with defense counsel's representation that there were no allegations in the complaint against Rhodes at all. And then Judge Allsup goes on to say, after detailing the allegations, that defense counsel then repeatedly asserted that any duty Rhodes owed was not owed to the nursing facility's patients, but rather was owed to the building. And I'm just wondering if Judge Allsup was just fed up with counsel at this point who seemed to be combative and vacillating and, in Judge Allsup's view, misrepresenting the record, and that that might have led the court to conclude that if that was counsel's position, then the removal must have been or the remand was appropriate. Yes, and I have no doubt that Judge Allsup was fed up. I was at one of those hearings. I was not at that hearing. I have no doubt in my mind that he was fed up with defense counsel and their misrepresentations to the court below. Your time is running, so I'm sorry to interrupt. This is Judge Fletcher. It strikes me that there's almost a tacit admission that the removal was pretty much of a long shot, given the arguments made by the counsel below, not today's counsel, but by the counsel below, recognizing that it was a dead-bang loser for removal, unless the allegations in the complaint here were like the allegations in Johnson. So he keeps pretending they're like Johnson, but they're not. They're so unlike Johnson, it's just obvious that there are several plausible causes of action stated, but he prefers not to admit that that's so. I mean, it seems to me that the argument is that even if you apply Judge Seaborg's standard, this case is so unlike Johnson that no reasonable lawyer would have said, oh, I'm going to win this in front of Judge Seaborg. And that's the point, and Your Honor articulated it much better than I have for the past few minutes, is no objective, reasonable attorney would have removed this case unless you just simply ignore the allegations of the complaint. And that's the basis of this appeal. That was the basis of the improper removal. And although Judge Alsop was frustrated and probably even angry with counsel's misrepresentations, it goes back to the fact that he awarded costs and fees because he believed that there was no objective, reasonable basis for removal, and there was no fraudulent joinder. So the fact that he may have been angry, I don't think, you know, I admit he was, but I don't think that affected his order. I believe it goes back to whether there were grounds for removal, and there simply weren't in this case. Okay, you're not seeing the clock, but I'm seeing it. We've just taken you slightly over time. Why don't we give the other side two minutes to respond? Thank you, Your Honor. Thank you, Your Honor. I'll be quick. Your Honor, you asked a question earlier during your colloquy with Mr. Medve about the timing of the two orders. The Johnson order was issued as, according to my notes, November 9th, 2015. The removal came one month and two days later. So it was right on, one right after the other. I think they read Judge Seaborg's order and said, bingo, we're removing. I'd like to point out to everybody, just so you can hear us say this, footnote 5 of the Johnson order, Judge Seaborg wrote, the complaint cites various statutes and regulations governing the licensing and certification of nursing facilities, but does not identify authority demonstrating how these regulations render a non-clinician administrator personally liable for substandard care. He continues, even assuming such a duty exists, plaintiffs have not included sufficient factual allegations showing how Rhoades breached her duties or caused Johnson's injuries. Now, a moment ago, counsel and I. Well, were the allegations the same in the Johnson complaint? I'm sorry, Your Honor? Were the allegations the same in the Johnson complaint? I assume it was also against Ms. Rhoades. It was against Ms. Rhoades. That's right. She's the same nursing administrator in both cases. She's the same nursing administrator in both cases. But were the allegations the same? Did the Johnson complaint contain allegations in paragraphs 40 through 40? No, it did not. It did not? It did not contain those. But just what I want you to understand is the reasoning. Having seen this, Judge Seaborg's reasoning that there's not sufficient factual allegations to explain it, showing how Rhoades breached her duties of care or caused the injuries. When we go to the paragraphs 40 to 48 of the complaint, and as Mr. Medby said just a few moments ago, my friend on the opposing counsel said that, see, it pleads causation. Well, what it said, when it pleads causation, it has a one-sentence conclusory statement, right? What I want you to understand is the thinking behind this was that a conclusory allegation under the settled rules of the State of California, which require fact not conclusions, that that was insufficient. It didn't meet the standard that Judge Seaborg. If you go back to the hypothetical that I asked you the last time you were at the podium. Yes. About the correlation between the failure to conduct the prescreening interview, the failure to talk to the patient's doctor. Therefore, we didn't know she suffered from all these infirmities, and we should have been taking special care of her to make sure she didn't fall. And then she falls. How much more do you need to allege in order to permit a reasonable jury to conclude that that established negligence? I think, Your Honor, the theory behind the removal on that, with the construct that you've read, is there must be some link between the you're assuming that there's a connection. Was there some information she would have learned? The conclusion would be that she should never have been admitted to the facility in the first place because it didn't have the appropriate facilities to care for her. And if there were an allegation in the complaint that pled those facts, that Mrs. Rhodes would have learned by speaking to the doctor or by screening that, in fact, there wasn't the proper staff available. They didn't have the right resources. They couldn't care for her. I understand are those certain. But they allege all that. They allege that the staff was inadequate, that it wasn't adequately trained, that it wasn't adequately supervised. But no one is alleging that that's... But it's all in the complaint. What I'm trying to say to you is, in our view, the argument we were making was that you need to be able to demonstrate from the interview. What would she have learned from the interview that would have informed her of those things? Would Mrs. Rhodes' physician... They would have learned that this woman was suffering from dementia, that she was unstable, that she'd previously suffered falls, and that that was one of the reasons why the family sought to have her admitted, or her doctor sought to have her admitted to a nursing home. I don't mean to argue with you, but to... Well, I'm not arguing with you. I'm just trying to tease out your position here. I understand. And I'm trying to figure out what's missing from the plaintiff's complaint. The thinking being is that simply are the... Behind is having Judge Seaborg having written here that in the Johnson case that there were insufficient factual allegations, not conclusory allegations, but factual allegations. The thinking is simply having 10 paragraphs where you repeat the same sentence that caused Ms. Thoreau's injuries without any factual detail is probably the better description that Judge Hawkins mentioned earlier, that the theory is that we need more detail factually to back that up, that under the settled rules of the State of California... My position is that this complaint doesn't meet Iqbal, Twombly, Fleeting standards. Well, Your Honor, actually, I don't think Iqbal and Twombly applies here, because remember, we go back to the McCabe test. You look to the settled rules of the State to determine whether a cause of action is stated. So we look to California. I mean, but aren't California pleading rules even more liberal than the Federal pleading standards are? I don't know about that. I'm not so sure that even I would admit to you... With regard to general negligence. I would concede under the case that we cited, the Williams case, that it does recognize that negligence can be pled generally. But there are limits to that generality. That's argued. I think we have your position. Thank you very much. Okay. Thank both sides for their arguments. And Mr. Midby, I'm sorry, Mr. Flight, but I'm glad we were able to hear you telephonically. Thank you so much again, Your Honors. You're welcome. And versus Thoreau, we're now submitted for decision. Thank you.
judges: Hawkins, W. Fletcher, Tallman